IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TERRY ALAN VANDYKE,           )
                                        )
         Plaintiff,            )
                                          )
      vs.                )     Civil Action No. 2:20-743
                                          )
KILOLO KIJAKAZI, Acting Commissioner of  )
Social Security[1],        )
                                          )
        Defendant.        )
                                          )

AMBROSE, Senior District Judge

**OPINION**
**and**
**ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 11 and 15]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 12 and 16]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Plaintiff's Motion for Summary Judgment [ECF No. 11] and granting Defendant's Motion for Summary Judgment. [ECF No. 15].

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. Plaintiff applied for DIB and SSI on or about August 31, 2016. [ECF

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is therefore automatically substituted for Andrew M. Saul as the Defendant in this suit.

No. 7-5 (Exs. 1D, 2D)]. Plaintiff alleged that since May 18, 2012, he had been disabled due to back injury, arthritis, depression, neuropathy, high blood pressure, diabetes, stomach issues, bad knees, short term memory loss, sleep apnea, severe depression, severe back pain, and inability to walk. [ECF No. 7-6 (Ex. 1E); ECF No. 7-5 (Exs. 1D, 2D)]. Administrative Law Judge ("ALJ") Thomas Auble held a hearing on August 23, 2018, at which Plaintiff was represented by counsel. [ECF No. 7-2 at 34-68]. Plaintiff appeared at the hearing and testified on his own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 59-64. In a decision dated October 24, 2018, the ALJ found that Plaintiff could return to his past relevant work as generally and actually performed and, alternatively, that other jobs existed in significant numbers in the national economy that Plaintiff could perform; therefore, Plaintiff was not disabled under the Act. [ECF No. 7-2 at 16-29]. Plaintiff requested review of the ALJ's determination by the Appeals Council, and the Appeals Council denied Plaintiff's request for review. [ECF No. 7-2 at 1-3]. Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 11 and 15]. The issues are now ripe for my review.

## II.   LEGAL ANALYSIS

### A.   STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Regardless of "the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (U.S. 2019). Substantial evidence has been defined as "more than a mere scintilla." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek, 139 S. Ct. at 1154. The Commissioner's findings of

2

fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to

3

the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5).   Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing.   Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.     WHETHER THE ALJ IMPROPERLY DETERMINED PLAINTIFF'S RFC BY FAILING TO INCLUDE LIMITATIONS RELATED TO HIS GOUT, INCONTINENCE, AND OBESITY IN COMBINATION WITH OBSTRUCTIVE SLEEP APNEA**

At step two of the analysis, the ALJ found that Plaintiff had severe impairments, including obesity, degenerative joint disease of the left ankle; diabetes mellitus with neuropathy, gout, and obstructive sleep apnea. [ECF No. 7-2, at 18]. The ALJ further found that Plaintiff had non-severe impairments of hyperlipidemia, anxiety, depression, asthma, and degenerative joint disease of the left knee. Id. at 18-19. He then found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 19-20. The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work as defined in 20 C.F.R. § 404.1567 such that he can lift up to 10 pounds occasionally; can stand and walk with normal breaks for about 2 hours in an 8-hour work day; can sit with normal breaks for about 6 hours in an 8-hour work day; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, and crouch; can never kneel or crawl; can occasionally operate foot controls bilaterally; can have no exposure to extreme cold, extreme heat, humidity, excessive vibration, operational control of a motor vehicle, unprotected heights, or hazardous machinery; and can have no concentrated exposure to irritants such as fumes, odors, dusts, gases, or poorly ventilated areas. [ECF No. 7-2 at 26]. The ALJ ultimately concluded Plaintiff was capable of performing his past relevant work as a customer service representative; and, alternatively, that there were other jobs that exist in the national economy that Plaintiff could

perform; therefore, Plaintiff was not disabled. Id. at 26-28.

Residual functional capacity ("RFC") refers to the most a claimant can still do despite his limitations. 20 C.F.R. §§ 404.1545(a); 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his own limitations. Id. Ultimately, however, the responsibility for determining a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 404.1527(d); 404.1546; 416.927(d); 416.946; Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Plaintiff argues that the ALJ's RFC finding is flawed because he erred in failing to include appropriate limitations related to Plaintiff's gout flare-ups, bowel incontinence from chronic diarrhea, and impaired mental clarity and sleepiness from his morbid obesity in combination with his obstructive sleep apnea. [ECF No. 12]. This argument is unpersuasive.

Contrary to Plaintiff's argument, the ALJ here specifically addressed the impairments at issue in his RFC analysis. First, the ALJ directly acknowledged Plaintiff's complaints regarding, inter alia, his gout attacks, sleep disturbances related to sleep apnea, diarrhea, and morbid obesity. [ECF No. 7-2, at 20-21]. He then found, however, that, although Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's symptoms were not entirely consistent with the medical evidence and other evidence of record. Id. at 21. For example, the ALJ noted Plaintiff's gout flare-ups, but cited medical records showing, inter alia, that there were long periods between reported flare-ups and that the gout, while severe, was stable with medication. Id. at 21-26. With respect to sleep apnea, the ALJ noted that it was partially controlled by use of a CPAP machine, that exams showed relatively normal respiratory/pulmonary function, and that treatment notes often reflected no sleep disturbances or complaints of fatigue. See id. The ALJ likewise noted Plaintiff's allegations of having diarrhea for 5 years, but pointed out treatment notes indicating no constipation or diarrhea. He also cited an incident where Plaintiff complained to his physician of diarrhea issues caused by his metformin medication, but the

physician noted that Plaintiff had been taking 4000mg of Metformin daily for 6 months without gastrointestinal problems. See id. Regarding obesity, the ALJ specifically acknowledged Plaintiff's then-current weight of 450 pounds and BMI over 50 and appropriately considered his other impairments in conjunction with his obesity. See id. at 19-26.

Further, the ALJ supported his findings in this regard with substantial evidence of record, including treatment notes, medication history, test and lab results, medical opinion evidence, and testimony. See id. (citing Exs. 3A, 4A, 5E, 1F, 2F, 3F, 4F, 5F, 7F, 8F, 9F, 10F, 11F, 12F, 13F, 14F, and Hearing Testimony). Finally, as set forth above, the ALJ included numerous limitations in his RFC finding related to the combination of Plaintiff's impairments that he concluded were supported by the record. See id. at 20. Indeed, the ALJ gave state agency consultant, Cresenco Calise, M.D.'s opinion little weight because it lacked the benefit of subsequently submitted objective medical evidence, and he added greater restrictions "based on the *combination of* the claimant's severe impairments of obesity, degenerative join[t] disease of the left ankle, diabetes mellitus with neuropathy, gout, and OSA, in conjunction with his non-severe impairments, taking into due account the claimant's subjective complaints." Id. at 24 (emphasis added).

To the extent Plaintiff cites medical evidence to support his claim for additional restrictions, the standard is not whether there is evidence to establish Plaintiff's position but, rather, is whether there is substantial evidence to support the ALJ's findings. See Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). As courts have explained:

> [The] question is not whether substantial evidence supports Plaintiff's claims, or whether there is evidence that is inconsistent with the ALJ's finding. . . . Substantial evidence could support both Plaintiff's claims and the ALJ's finding because substantial evidence is less than a preponderance. Jesurum v. Sec'y of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If substantial evidence supports the ALJ's finding, it does not matter if substantial evidence also supports Plaintiff's claims. Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).

Hundley v. Colvin, Civil Action No. 16-153, 2016 WL 6647913, at *2 (W.D. Pa. Nov. 10, 2016).

Thus, any argument in this regard is misplaced.

**C.** **WHETHER THE ALJ IMPROPERLY DETERMINED PLAINTIFF'S RFC BY FAILING TO INCLUDE LIMITATIONS RELATED TO HIS MILD MENTAL IMPAIRMENTS**

Plaintiff argues that the ALJ erred in failing to include limitations related to his mild mental impairments in his RFC finding. [ECF No. 12, at 3, 22-23]. This argument is without merit.

As set forth above, the ALJ considered Plaintiff's medically determinable impairments of anxiety and depression at step two of his analysis and concluded that they "did not cause more than minimal limitation" in Plaintiff's "ability to perform basic mental work activities" and, therefore, were non-severe. [ECF No. 7-2, at 18]. In so finding, the ALJ considered the four broad areas of mental functioning set out in the regulations for evaluating mental disorders – understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself – and found that Plaintiff had only mild limitations in each area. Id. at 18-19; see also 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

I disagree with Plaintiff that the ALJ failed to consider his non-severe mental limitations in performing his RFC analysis. To the contrary, the ALJ specifically recognized at step two that "[n]on-severe impairments can, . . . when considered in conjunction with one another and the claimant's severe impairments, affect his residual functional capacity," and, stated that "[i]n recognition of this fact, and in accordance with SSR 96-8p, any such effect that the claimant's non-severe impairments would have on his ability to function have been considered when formulating his residual functional capacity." [ECF No. 7-2, at 18]. The ALJ continued by stating that he was "satisfied that the range of work in the residual functional capacity accounts for any limitations from these impairments." Id.; see also id. at 19 (noting that the paragraph B findings are not an RFC assessment). Consistent with these statements, the ALJ discussed Plaintiff's medical records in connection with his depression and anxiety symptoms throughout his RFC analysis and concluded that, although Plaintiff has diagnoses of depression and anxiety, the

records reflect that he typically reports no issues with anxiety or depression. Id. at 20-26 (citing Exs. 3F, 9F, 10F). Again, the ALJ specifically stated that his RFC findings were based on the combination of Plaintiff's severe impairments, "in conjunction with his non-severe impairments," taking into due account Plaintiff's subjective complaints. Id. at 24. Because the ALJ considered all of Plaintiff's impairments in making his RFC finding, I do not find any error in this regard. See, e.g., Kelly v. Colvin, Civil Action No. 13-1153, 2014 WL 4925089, at *1 n.1 (W.D. Pa. Sept. 30, 2014); Delio v. Colvin, Civil Action No. 13-78-E, 2014 WL 4414830, at *4 (W.D. Pa. Sept. 8, 2014); D.C. v. Comm'r of Soc. Sec., Civil No. 20-2484 (RBK), 2021 WL 1851830, at *3-*6 (D.N.J. May 10, 2021); Younge v. Berryhill, Civil Action No. 16-5271, 2017 WL 2978758, at *12-*13 (E.D. Pa. Aug. 14, 2017).

**D.    WHETHER THE ALJ ERRED IN HIS EVALUATION OF THE MEDICAL OPINION EVIDENCE**

Plaintiff argues that the ALJ erred by failing to make a "persuasive determination" as to treating physician Justin Wentworth, D.O.'s medical findings and opinions and whether or not to give those findings and opinions controlling weight. [ECF No. 12, at 3, 21-22]. After careful consideration, I disagree.

The amount of weight accorded to medical opinions is well-established. Generally, the opinions of a claimant's treating physicians are entitled to substantial and, at times, even controlling weight. 20 C.F.R. §§ 404.1527, 416.927. [2] To be entitled to controlling weight, however, the treating physician's opinion must be well supported by medical techniques and consistent with the other substantial evidence of record. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). To determine the weight of a treating physician's opinion, the ALJ may consider

---

[2] Although the regulations governing the evaluation of medical evidence have been amended, the new version effective March 27, 2017, does not apply to the present claim. See 20 C.F.R. §§ 404.1527, 416.927 (2017); 20 C.F.R. §§ 404.1520c, 416.920c (2017).

a number of factors, including consistency, length of treatment, corroborating evidence, and supportability. 20 C.F.R. §§ 404.1527, 416.927. As the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Soc. Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009).

In July 2018, based on a functional capacity evaluation performed by PT Kimberly Metzger, Dr. Wentworth opined that Plaintiff could not work at any exertional level for an 8-hour day; that he was severely limited in sitting, standing, and walking; that he could carry no more than 10 pounds; he could not perform floor to waist lifting due to pain and inability to squat; could never kneel; could rarely/minimally repetitively forward bend and twist; could occasionally reach forward, reach overhead, and climb stairs; and that Plaintiff self-reported he was limited to 5-10 minutes of standing and walking and 30 minutes of sitting at a time. [ECF No. 7-2 at 24-25 (citing Ex. 12F)]. Dr. Wentworth also opined in July 2018 that Plaintiff's obstructive sleep apnea and restless leg syndrome caused moderate to severe excessive daytime sleepiness such that it prevented work. Id. at 25 (citing Ex. 14F).

As Plaintiff acknowledges in his brief, the ALJ considered Dr. Wentworth's opinions and gave them little weight. [ECF No. 12, at 3-4, 22; ECF No. 7-2 at 25]. In so doing, the ALJ first correctly noted that a determination of disability is an issue reserved for the Commissioner. Thus,

9

the ALJ was not required to give Dr. Wentworth's opinions that Plaintiff was unable to work any special significance or weight. See ECF No. 7-2 at 25 (citing 20 C.F.R. §§ 404.1513(a); 416.927(d)). Further, the ALJ noted that Dr. Wentworth's opinions were inconsistent with the objective medical evidence, including his own treatment notes. See id. (citing Exs. 5F, 8F, 9F, 10F). Among the examples the ALJ cited were March 2017 imaging results showing no acute abnormality involving the lumbar spine; examination notes indicating normal gait with normal ranges of motion of the back; November 2017 notes assessing Plaintiff's gout as stable with medication; March 2018 imaging results of the left knee showing only diffuse soft tissue swelling and only mild degenerative changes; May 2018 examination notes reporting no joint pain and no acute distress; June and July 2018 records from Pain and Spine Specialists reporting no muscle aches or weakness, no arthralgias/joint pain, no back pain or swelling in the extremities, no numbness, no fatigue, 5/5 and 4/5 motor strength, ability to walk on his heels and toes, and normal movement of the extremities; and June 2018 records in which Plaintiff reported no cough, shortness of breath, obstructive sleep apnea, wheezing, sleep disturbances, or fatigue. See id. (citing Exs. 9F, 10F).

Contrary to Plaintiff's assertions, these are valid and acceptable reasons for discounting opinion evidence. See 20 C.F.R. §§ 404.1527, 416.927; S.S.R. 06-03p. Although Plaintiff urges that the treating physician rule should govern, that doctrine does not require ALJs to give controlling weight to treating physician opinions that, as here, are inconsistent with or unsupported by underlying treatment records and other record evidence. See 20 C.F.R. §§ 404.1527, 416.927. To the extent Plaintiff suggests that the ALJ failed to apply the correct controlling weight factors (ECF No. 12 at 3-4, 22), his argument is misplaced. The ALJ repeatedly cited and applied the regulations (20 C.F.R. §§ 404.1527, 416.927) and associated standards in effect at the time of Plaintiff's claims in this case. [ECF No. 7-2, at 20, 25].

For all of these reasons, I find that the ALJ properly evaluated the medical opinion

evidence using appropriate factors as set forth in the then-applicable regulations and that substantial evidence of record supports the ALJ's weighing of those opinions. See ECF No. 7-2 at 24-26 (citing, inter alia, Exs. 3A, 4A, 5E, 1F, 2F, 3F, 4F, 5F, 7F, 8F, 9F, 10F, 11F, 12F, 13F, 14F, and Plaintiff's testimony).

E.  **WHETHER THE ALJ ERRONEOUSLY FAILED TO ASSESS PLAINTIFF'S FUNCTIONAL LIMITATIONS ON A FUNCTION-BY-FUNCTION BASIS BEFORE MAKING HIS RFC FINDING**

Plaintiff argues that the ALJ erred by failing to identify his functional limitations and assessing his work related abilities on a function-by-function basis before making his RFC finding in contravention of Social Security Ruling 96-8p. [ECF No. 12, at 3, 17, 23]. I disagree. Ruling 96-8p requires simply that an ALJ "make a function-by-function assessment of the individual's limitations or restrictions" in determining a claimant's RFC prior to restricting them to an exertional category such as sedentary or light work. Consideration of an individual's ability to perform specific work-related functions is critical, for example, in determining his or her ability to perform past relevant work and whether he or she can perform a full or reduced range of work at a given exertional level. S.S.R. 96-8p. Here, there is no question that the ALJ performed a full and adequate function-by-function analysis of Plaintiff's limitations. As touched upon above, the ALJ's analysis spans over seven pages and, in accordance with Ruling 96-8p, includes discussion describing how the evidence supports each of his conclusions, citing specific medical facts and nonmedical evidence. [ECF No. 7-2, at 20-27]. To the extent Plaintiff is referring to the bold language set forth at the beginning of Finding 5 to somehow suggest that the ALJ concluded Plaintiff could perform sedentary work prior to conducting a function-by-function analysis, such language follows standard procedure and simply states the RFC determination the ALJ reached *after* conducting the extensive functional analysis set forth in the subsequent seven pages of his analysis. For these reasons, remand is not warranted on this issue.

F.  **WHETHER THE ALJ IMPROPERLY DISREGARDED THE VE TESTIMONY AND/OR**

**RELIED ON INACCURATE HYPOTHETICAL QUESTIONS TO THE VE**

Plaintiff argues that the ALJ erred in failing to include Plaintiff's mild mental limitations in his hypothetical questions to the Vocational Expert and in disregarding the VE's testimony that an individual with excess absences, excessive off-task tolerance, and the need to take unscheduled work breaks would be precluded from all work. [ECF No. 12 at 3, 14-15, 23-24]. He also contends that the ALJ's hypothetical questions failed to include all of Plaintiff's limitations related to gout, incontinence, and impaired mental clarity and sleepiness from his morbid obesity in combination with his obstructive sleep apnea. See id. This argument is without merit. It is well-settled that the law only requires the ALJ to include limitations supported by the record in his hypothetical question to the vocational expert. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). Here, the substantial evidence cited above shows that the hypothetical questions the ALJ adopted accurately reflected Plaintiff's impairments. See ECF Nos. 7-2, at 26-27, 59-64. As discussed more fully above, Plaintiff's arguments that the ALJ improperly evaluated the impairments at issue and erred in failing to include certain limitations based thereon in the RFC finding are without merit. Because the ALJ properly considered Plaintiff's limitations supported by the record, and the hypothetical questions on which the ALJ relied accurately reflected those limitations, I find no error on this issue.

**G. WHETHER THE ALJ IMPROPERLY DISREGARDED PLAINTIFF'S PAIN MEDICATION IN FINDING HE COULD RETURN TO HIS PAST RELEVANT WORK**

Finally, Plaintiff makes a passing suggestion that his prescription pain medications preclude him from performing his past relevant work as a customer service representative because the job requirements prohibit the use of such medications. See ECF No. 12 at 15 (asserting that a "drug pain prescription disqualifies a claimant from returning to his past relevant work" and that a "mandatory requirement that employers cannot hire people with a certain level of pain medication in their blood is in essence a physical demand of the job"). This cursory

argument is without merit. The only case Plaintiff cites in support of this declaration, Berry v. Astrue, 622 F.3d 1228, 1231-32 (9th Cir. 2010), is a Ninth Circuit case involving a claimant whose past relevant work as a courier driver carried a mandatory drug testing requirement imposed on employers of commercial courier drivers by statute. Id. Berry does not stand for the broad proposition that a drug pain prescription precludes past relevant work that does not impose a similar requirement.

Here, Plaintiff does not assert that his past relevant work as a customer service representative carried a mandatory drug testing requirement similar to that at issue in Berry. He likewise has not offered or attempted to offer proof of the same. Thus, Berry is not analogous to this case and does not provide a basis to remand Plaintiff's claim. Even if Plaintiff could show that customer service representatives such as himself are subject to mandatory drug testing and that his medications would prevent him from passing such a test, any error in this regard is harmless because the ALJ did not stop his analysis at step four. Rather, the ALJ alternatively found that jobs exist in the national economy that Plaintiff could perform, including, office worker, compact assembler, and table worker. [ECF No. 7-2, at 27]. Plaintiff does not contend that any of these positions are subject to mandatory drug testing. For all of these reasons, remand is not appropriate on this issue.

## III.   CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TERRY ALAN VANDYKE,          )
          )
        Plaintiff,     )
          )
     vs.       )     Civil Action No. 2:20-743
          )
KILOLO KIJAKAZI, Acting Commissioner of   )
Social Security[1],    )
          )
       Defendant.   )
          )

AMBROSE, Senior District Judge

**ORDER OF COURT**

AND NOW, this 27th day of July, 2021, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that the decision of the ALJ is affirmed and that Defendant's Motion for Summary Judgment [ECF No. 15] is GRANTED and Plaintiff's Motion for Summary Judgment [ECF No. 11] is DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is therefore automatically substituted for Andrew M. Saul as the Defendant in this suit.